IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TAMMY LOUISE GORDON,

      **Plaintiff,**

v.                         **Case No.: 2:20-cv-00478**

ANDREW SAUL,
**Acting Commissioner of the
Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 13, 14).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's request for

judgment on the pleadings be **GRANTED**, the Commissioner's decision be **AFFIRMED,** and this case be **DISMISSED** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

In November 2017, Plaintiff, Tammy Louise Gordon ("Claimant") completed a DIB application, alleging a disability onset date of January 25, 2017, due to "right carpal tunnel syndrome; tarsal tunnel syndrome [in] both feet; diabetes; fibromyalgia; anxiety; depression; restless leg syndrome; osteoarthritis [of the] knees, back, neck; and hypothyroidism with chronic fatigue." (Tr. at 201-07, 217). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 123-27, 136-39). Claimant filed a request for an administrative hearing, which was held on July 9, 2019, before the Honorable Francine A. Serafin, Administrative Law Judge (the "ALJ"). (Tr. at 39-58). By written decision dated July 30, 2019, the ALJ found that Claimant was not disabled as defined in the Social Security Act. (Tr. at 12-38). The ALJ's decision became the final decision of the Commissioner on May 13, 2020, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's Complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10). Thereafter, Claimant filed a Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 13), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 14). The time period within which Plaintiff could file a reply to the Commissioner's brief expired. Consequently, the matter is fully briefed and ready for resolution.

## II.    **Claimant's Background**

Claimant was 45 years old on her alleged onset date and 46 years old on her date last insured. (Tr. at 31). She completed high school, communicates in English, and previously worked as a grocery deli manager and restaurant general manager/trainer. (Tr. 216, 218, 219).

## III.    **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the

limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents his or her findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2)

4

interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional area described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2017. (Tr. at 17, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from her alleged onset date on January 25, 2017, through her date last insured on December 31, 2017. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: diabetes mellitus with neuropathy, fibromyalgia, degenerative disc disease of the lumbar spine with stenosis, osteoarthritis of the knees, carpal tunnel syndrome, cervicalgia, tarsal

tunnel syndrome, hallux limitus, obesity, anxiety, depression, and somatic disorder. (*Id.,* Finding No. 3). The ALJ also considered Claimant's post-traumatic stress disorder (PTSD), but the ALJ concluded that the impairment was non-severe. (Tr. at 17-18). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 18-24, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can frequently balance, stoop, kneel, crouch, and crawl. The claimant can perform no operation of foot controls. The claimant is capable of frequent fingering, handling, and feeling with the bilateral upper extremities. The claimant must avoid frequent exposure to extreme cold, heat, vibration, and workplace hazards such as moving machinery or unprotected heights. The claimant is capable of simple, routine, repetitive work with occasional interaction with coworkers and supervisors and no interaction with the public.

 (Tr. at 24-31, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform her past relevant work. (Tr. at 31, Finding No. 6). Therefore, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in other substantial gainful activity. (Tr. at 31-33, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1971 and was defined as a younger individual age 18-49 on her date last insured; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of her transferable job skills. (Tr. at 31, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational

6

expert, the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a non-postal mail clerk, routing clerk, or price marker. (Tr. at 31-33, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 33, Finding No. 11).

## IV.    Claimant's Challenge to the Commissioner's Decision

In her sole challenge to the Commissioner's decision, Claimant contends that the ALJ did not adequately explain her step three finding that Claimant did not meet or equal the criteria of listing 1.04(A) concerning spine-related disorders. (ECF No. 13 at 5). In response, the Commissioner argues that the ALJ appropriately concluded that Claimant did not meet listing 1.04(A) because Claimant did not offer evidence of a positive seated straight leg raising test in both the sitting and supine positions as required by the listing. (ECF No. 14 at 2, 7).

## V.    Relevant Evidence

The undersigned considered all evidence of record and summarizes below the evidence that is most relevant to the issue in dispute.

### A. Treatment Records

Mohammed Imani, DPM, examined Claimant in 2017 and early 2018. During each of those examinations on May 11, June 14 and 28, July 28, August 14 and 31, September 15 and 20, 2017, and January 29 and February 26, 2018, Claimant's deep tendon reflexes were normal, she had full muscle strength, and her sensation was only diminished in her ankles. (Tr. at 320, 324, 330, 336, 341, 345, 351, 355, 567, 571).

Claimant presented as new patient to pain relief physician, Timothy R. Deer, M.D., at the Spine and Nerve Center, Inc., on February 28, 2018. On examination, Dr. Deer

recorded that a "straight leg raising test was positive," a "straight leg raising test of the right leg was positive," and "straight leg raising test of the left leg was positive." (Tr. at 503). Dr. Deer also found that Claimant had decreased sensation in her lower extremities, muscle atrophy in both legs, lower extremity weakness, and abnormal knee and ankle jerk reflexes bilaterally. (*Id*.). Dr. Deer ordered an MRI and recommended lumbar facet injections and a back brace. (Tr. at 505). The lumbar MRI, which was taken on March 28, 2018, showed degenerative changes at L4-5 with mild to moderate canal narrowing and moderate to severe bilateral foraminal narrowing. (Tr. at 513).

Claimant followed up with Wilfrido Tolentino, PA-C, at the Spine and Nerve Center, Inc., on April 5, 2018. (Tr. at 506). Claimant did not have any sensory deficits during that examination, including no numbness, tingling, or weakness in her lower extremities. (Tr. at 508). Claimant's straight leg raising test was also negative. (*Id*.). On April 19, 2018, Claimant presented for her first session with physical therapist Mindy Gardner, MSPT. Ms. Garner documented that Claimant had muscle atrophy in her left lower extremity and reduced muscle strength of 4/5. (Tr. at 422-24). However, the following day, on April 20, 2018, Dr. Imani recorded that Claimant's tendon reflexes were normal, she had 5/5 muscle strength, and her sensation was only diminished in her ankles. (Tr. at 575). PT Gardner again recorded findings of muscle atrophy in Claimant's left lower extremity and reduced muscle strength rated 4/5 on May 14 and June 1, 2018. (Tr. at 389-90, 404-05).

On June 15, 2018, Claimant followed up with Dr. Deer regarding low back pain. (Tr. at 487). She reported numbness and tingling in her right leg and both feet. (Tr. at 487). Dr. Deer found on examination that Claimant's left knee and ankle jerk reflexes were abnormal. (Tr. at 489-90). However, one month later, on July 16, 2018, Dr. Imani

documented Claimant's normal deep tendon reflexes, normal muscle strength, and diminished sensation to her ankles. (Tr. at 579). PT Gardner again recorded that Claimant had muscle atrophy in her left lower extremity and reduced muscle strength 4/5 on August 6, 2018. (Tr. at 516-17). Yet, Ashley Comer, APRN, NP-C, at the Spine and Nerve Center, Inc., found on August 16 and October 22, 2018, that Claimant's sensation was intact, and she did not have any lower extremity weakness. (Tr. at 474-75, 480). Dr. Imani determined on October 31 and November 28, 2018, that Claimant's deep tendon reflexes were normal, Claimant had full muscle strength, and her sensation was diminished in her ankles. (Tr. at 583, 587).

On January 17, 2019, Claimant presented to Ziad Kahwash, M.D., regarding diabetes. Dr. Kahwash found on examination that Claimant had trace deep tendon reflexes and reduced sensation. (Tr. at 618). Dr. Deer likewise recorded on February 1, 2019, that Claimant had numbness in her lower extremities, but no weakness, and Claimant's MRI showed arthritis in Claimant's joints. (Tr. at 597-98). On March 11, 2019, Dr. Imani again found that Claimant's deep tendon reflexes were normal, she had full muscle strength, and her sensation was diminished to her ankles. (Tr. at 591).

### B. Evaluations and Prior Administrative Findings

Approximately two years before Claimant's disability onset date, on December 30, 2014, Brandon Smith, M.D., performed an internal medicine examination of Claimant. He noted that Claimant's seated straight leg raising test was negative, but her supine straight leg raising test was abnormal. (Tr. at 294, 295). Claimant's sensation was well preserved in all areas except for her feet, and her reflexes were symmetrical and graded normally. (Tr. at 294).

On February 1, 2018—more than three years later and during the pendency of

Claimant's application for DIB—Kip Beard, M.D., performed another internal medicine examination of Claimant. Claimant's seated straight leg raising test was negative, and her supine straight leg raising test was 70 percent bilaterally with knee pain on the left and knee and ankle pain on the right. (Tr. at 377). Claimant had reduced sensation in her feet and hands, but her reflexes were intact. (Tr. at 379-80).

On February 20, 2018, state agency physician Pedro F. Lo, M.D., assessed Claimant's RFC based upon his review of Claimant's records. Dr. Lo concluded that Claimant could perform work at the light exertional level with frequent balancing, stooping, kneeling, crouching, and crawling; occasional climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds; no concentrated exposure to extreme temperatures or vibration; and not even moderate exposure to hazards. (Tr. at 96-97). Palle Reddy, M.D., affirmed Dr. Lo's findings at the reconsideration level of review on May 15, 2018. (Tr. at 114-15).

### C. Claimant's Statements

Claimant testified during her administrative hearing on July 9, 2019, that her back pain radiated into her legs, ankles, and feet, particularly in her right lower extremity. (Tr. at 46). Claimant further reported numbness and tingling in her thighs, calves, and toes. (Tr. at 47).

## VI.    <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable regulations and rulings in reaching his or her decision and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  <u>Discussion</u>

Claimant asserts that the ALJ failed to adequately explain her finding that Claimant did not meet or equal the criteria of listing 1.04(A). A claimant should be found disabled at step three of the sequential evaluation process when his or her impairments meet or medically equal an impairment included in the Listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The Listing describes "for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 404.1525. The Listing is intended to identify those individuals whose mental or physical impairments are so severe that they would be found disabled regardless of their vocational background; consequently, the criteria defining the listed impairments are set at a higher level of severity than that required to meet the statutory definition of disability. *Sullivan v.*

*Zebley,* 493 U.S. 521, 532, (1990). Because the listed impairments presume disability, for a claimant to show that his or her impairment matches a listed impairment, it must meet *all* of the specified medical criteria. *Id.* at 530. The claimant bears the burden of production and proof at this step of the disability determination process. *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir. 1983).

In the Fourth Circuit, "where there is factual support that a listing could be met," the ALJ must consider whether the claimant's impairment meets or equals the relevant listing. *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir. 1986)). "The ALJ's analysis must reflect a comparison of the symptoms, signs, and laboratory findings concerning the impairment, including any resulting functional limitations, with the corresponding criteria set forth in the relevant listing." *Id.* at 390-91; *see also Ezzell v. Berryhill*, 688 F. Appx. 199, 200 (4th Cir. 2017) ("When there is 'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of the claimant's symptoms.'") (citing *Cook*, 783 F.2d at 1172-73) (internal markings omitted).

As is the case throughout the sequential evaluation process, the ALJ must set forth the reasons for the step three determination. *See, e.g.*, *Radford v. Colvin*, 734 F. 3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling.") (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)). An ALJ's explanation is insufficient if it only states that the ALJ considered the listing of impairments and offers nothing to reveal *why* the ALJ made his or her determination. *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) ("Our circuit

precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."). Likewise, it is generally unacceptable for an ALJ to summarily conclude that a claimant does not have an impairment or combination of impairments that meets a listing; the ALJ's decision must include a discussion that applies the pertinent legal requirements of the listing to the record evidence. *Radford*, 734 F.3d at 295. While an "ALJ is not required to explicitly identify and discuss every possible listing," the ALJ "is compelled to provide a coherent basis for [the] Step Three determination." *Ezzell*, 688 F. App'x at 200 (citation omitted).

In *Radford*, the Fourth Circuit found that an ALJ's step three analysis was "devoid of reasoning" and the ALJ's summary conclusion that the claimant did not meet a listing made is impossible for a reviewing court to evaluate whether substantial evidence supported the ALJ's findings. *Radford*, 734 F.3d at 295. However, the Fourth Circuit noted that a full explanation by the ALJ was particularly important in Radford's case because the medical record included a fair amount of evidence supportive of his claim; in fact, the record contained five years of medical examinations and probative evidence strongly suggesting that Radford met or equaled the relevant listing. *Id*. Similarly, in *Fox*, the Fourth Circuit found that the ALJ failed to explain the step three finding despite inconsistent evidence in the file, including a treating physician's numerous statements about the claimant's severe limitations, which possibly supported a finding that the claimant met the relevant listing. *Fox*, 632 F. App'x at 755 (4th Cir. 2015).

Despite the admonitions of the Fourth Circuit in *Radford* and *Fox* regarding an ALJ's duty of explanation at step three, "if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may

provide a basis for upholding the ALJ's determination." *McDaniel v. Colvin*, No. 2:14-CV-28157, 2016 WL 1271509, at *4 (S.D.W. Va. Mar. 31, 2016) (quoting *Smith v. Astrue*, 457 Fed. Appx. 326, 328 (4th Cir. 2011) ("Reading the ALJ's decision as a whole, substantial evidence supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting [the listing].")). Indeed, "the ALJ need only review medical evidence once in his [or her] opinion." *Id.* at *4 (quoting *McCartney v. Apfel*, 28 Fed. Appx. 277, 279 (4th Cir. 2002)). Ultimately, "[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Id.* (citing *Smith*, 457 Fed. Appx. at 328). Simply put, the written decision must demonstrate that the ALJ adequately performed all of the key tasks required by the sequential disability evaluation process. When the record includes conflicting evidence, or facts suggesting that the claimant might meet a listing, the ALJ's discussion is particularly important. Yet, "[i]f the court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination, the ALJ's decision may be affirmed." *Marcum v. Berryhill*, No. CV 16-2297, 2017 WL 1095068, at *4 (S.D.W. Va. Mar. 23, 2017).

The instant matter concerns listing 1.04, which relates to disorders of the spine that result in nerve root compromise. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04 (effective May 22, 2018). In order to satisfy paragraph A of the listing, a claimant must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)." *Id.*,

§ 1.04(A).

The Fourth Circuit emphasized in *Radford* that listing 1.04(A) requires evidence "that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." *Radford*, 734 F.3d at 294. However, the claimant need not show that each symptom was present at precisely the same time or in close proximity to establish the chronic nature of his or her condition. *Id.*

In this case, the ALJ expressly recognized the Fourth Circuit's directive that the listing 1.04(A) criteria need not be present simultaneously. (Tr. at 20). However, the ALJ concluded that the evidence did not show nerve root compromise or compression for a 12-month period for the following reasons. (*Id.*). The ALJ noted that there was some evidence of positive straight leg raising tests and range of motion deficits, but no evidence of atrophy, sensory loss, or reflex loss, and Claimant's straight leg raising tests were positive and negative within the same medical records. (*Id.*). The ALJ cited that Claimant's seated straight leg raising tests were negative in December 2014 and February 2018. (Tr. at 20, 27). In addition, the ALJ discussed that Claimant's supine straight leg raising test during her consultative examination in February 2018 only elicited knee pain on the left and knee and ankle pain on the right, which were not positive findings. (*Id.*). Furthermore, the ALJ cited that Claimant's treatment notes demonstrated stable process with no instability, and Claimant's physical examinations were unremarkable. (*Id.*). In terms of motor and sensory loss, the ALJ explained that Claimant's neuropathy was attributed to diabetes, not a spinal impairment, and Claimant had full muscle strength and normal muscle tone. (*Id.*). The ALJ acknowledged that Claimant's physical therapist documented some weakness in Claimant's left lower extremity in June 2018, but she was

non-specific regarding the extent of weakness, and she subsequently indicated that Claimant was improving and becoming stronger with increased exercise. (*Id.*).

Claimant asserts two arguments concerning the ALJ's foregoing analysis of listing 1.04(A). First, she contends that the ALJ provided "no rationale for why she gave the unfavorable straight leg raise tests greater weight" than the positive findings. (ECF No. 13 at 7). She argues that "when the ALJ saw that there were records that documented positive straight leg tests throughout (Tr. at 503 for a specific example) the ALJ [could not] rightfully use a different exam where the straight leg test was not present to negate the positive straight leg test findings." (*Id.*). Second, Claimant contends that the ALJ did not sufficiently explain why she disregarded the evidence of Claimant's sensory and reflex loss. (*Id.*). Each of Claimant's arguments are considered below, in turn.

### A. Straight Leg Raising Tests

"The straight leg raise test, also called the Lasēgue test, is a fundamental maneuver during the physical examination of a patient with lower back pain," which "aims to assess for lumbosacral nerve root irritation." Gaston O. Camino Willhuber & Nicolas S. Piuzzi, *Straight Leg Raise Test*, NAT'L CENTER FOR BIOTECHNOLOGY INFO., U.S. NAT'L LIBR. OF MED. (last updated Feb. 8, 2021), https://www.ncbi.nlm.nih.gov/books/NBK539717. In layman's terms, the straight leg raising test evaluates whether the patient suffers from sciatic pain radiating from the buttocks to the leg. *Id*. The test is generally performed in the supine position with the examiner raising the patient's fully extended leg from the hip. *Id*. It is considered positive when the patient experiences pain along the lower limb in the same distribution of the lower radicular nerve roots (usually L5 or S1) or when pain is elicited by lower limb flexion at an angle lower than 45 degrees. *Id*. The test can also be performed in the seated position with the leg flexed 90 degrees and extended by the

examiner until pain in elicited. Anthony J. Busti, *Straight Leg Raising Test*, EVIDENCE-BASED MED. CONSULT (Sept. 2016), https://www.ebmconsult.com/articles/straight leg-raising-test.

As noted, listing 1.04(A) requires evidence of both seated and supine straight leg raising tests. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A) (effective Sept. 24, 2019). Claimant argues that the ALJ found that there were "positive straight leg tests throughout" the record and selectively relied on negative examinations without sufficiently explaining her reasons for disregarding positive findings. However, the ALJ did not find "positive straight leg tests throughout" the record, as Claimant suggests, and the evidence does not reflect multiple positive examinations. In fact, Claimant cites only one positive straight leg raising test in her brief, which the ALJ considered. (ECF No. 13 at 7); (Tr. at 20) (citing Exhibit 10F).

Importantly, Claimant does not offer <u>any</u> evidence of straight leg raising examinations, much less positive findings, from the relevant period. She produced a single straight leg raising test that was performed two years *before* her alleged onset of disability, and thus outside of the period in question, as well as straight leg raising tests that were performed *after* her date last insured. A claimant must show that he or she became disabled before his or her date last insured for the purpose of DIB. *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012) (citing *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)). Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's date last insured. *Id*. However, in this case, the ALJ appropriately determined that the records of Claimant's straight leg raising tests did not establish that Claimant was presumptively disabled under listing

1.04(A).

The following straight leg raising tests are documented in the record:

1. On December 30, 2014, approximately two years before Claimant's alleged onset date on January 25, 2017, consultative examiner Dr. Smith found that Claimant's seated straight leg raising test was normal, but it was "abnormal" in the supine position. (Tr. at 294)

2. On February 1, 2018, shortly after Claimant's date last insured on December 31, 2017, consultative examiner Dr. Beard likewise noted Claimant's negative seated straight leg raising test, and he found that Claimant complained of knee pain on the left and knee and ankle pain on the right at 70 degrees in the supine position. (Tr. at 377).

3. On February 28, 2018, Claimant's physician, Dr. Deer, recorded that "a straight leg raising test was positive, a straight leg raising test of the right leg was positive, a straight leg raising test of the left leg was positive." (Tr. at 503). Dr. Deer did not specify whether the test was positive in the seated position, supine position, or both. (*Id.*).

4. On April 5, 2018, Dr. Deer's colleague PA-C Tolentino recorded that "[a] straight leg raising test was negative." (Tr. at 508).

The ALJ properly considered and reconciled the above findings, and her analysis is supported by substantial evidence. The ALJ correctly noted that Dr. Smith only stated that the 2014 examination was abnormal, not positive, in the supine position, and it was certainly not positive in the seated position. (Tr. at 20). The ALJ cited that Claimant's seated straight leg raising test was again negative when Dr. Beard performed the examination on February 1, 2018, and the test was also negative in the supine position because it produced only knee and ankle pain. (Tr. at 20, 27). A straight leg raising test "is positive when raising the leg between 30 to 70 degrees causes pain to occur and radiate down the leg to <u>at least below the knee</u>, and often all the way down to the great toe." Aisha Liferidge, *Performing Straight Leg Raise for Sciatica*, U. OF MD. SCH. OF MED. (updated June 18, 2021) (emphasis in original). As the ALJ indicated, Dr. Beard did not document pain radiating into Claimant's extremities. Rather, Dr. Beard recorded that the straight

18

leg raising test only elicited pain in Claimant's knees and ankle. The ALJ adequately expressed her reasoning that, despite Dr. Deer's positive findings on February 28, 2018, there were negative examinations within the same medical records. In fact, not only was Claimant's straight leg test negative during her consultative examination in February 2018, the same month as the only positive straight leg raising test that Claimant cited in her brief, but Dr. Deer's physician assistant found that Claimant's straight leg raising test was negative in April 2018. (Tr. at 508).

Under the most liberal interpretation, Claimant identifies an isolated straight leg raising test that was positive after her date last insured. Even assuming *arguendo* that that test was positive in the seated and supine positions, Claimant's reliance on *Cook* and *Radford* is misplaced because the ALJ properly compared the evidence to the listing criteria, reconciled conflicting evidence, and articulated her analysis to permit meaningful review. In addition, the ALJ appropriately recognized that Claimant's symptoms need not occur simultaneously or in close proximity, but appropriately recognized that the *Radford* decision did not eliminate the 12-month duration requirement. As the ALJ clearly expressed in her decision, Claimant's straight leg raising tests were primarily negative, which the ALJ found indicative that Claimant did not suffer from lumbosacral nerve root compression continuously for at least 12 months. Therefore, the ALJ correctly determined that Claimant's isolated February 28, 2018, straight leg raising test did not satisfy the listing. *See Henderson v. Colvin*, 643 F. App'x 273, 276 (4th Cir. 2016) (affirming that the district court properly found that the ALJ's conclusion that the claimant did not meet listing 1.04(A) was supported by substantial evidence, stating that a lone clinical finding of muscle weakness did not undercut the substantial conflicting evidence of the claimant's normal strength).

19

In addition, as the Commissioner correctly identified, any supposed error by the ALJ at step three is harmless because Claimant did not offer any explicit evidence of a positive straight leg raising test in both positions. Thus, she could not satisfy listing 1.04(A). Under the current regulation, the Agency assumes that a positive straight leg raising test was performed in both positions unless the evidence indicates otherwise. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(C)(2)(a) (effective Apr. 2, 2021) ("When the medical source reports that a clinical test sign(s) is positive, unless we have evidence to the contrary, we will assume that he or she performed the test properly and accept the medical source's interpretation of the test. For example, we will assume a straight leg raising test was conducted properly (that is, in sitting and supine positions), even if the medical source does not specify the positions in which the test was performed.").

However, the regulatory text that was in effect at the time of the ALJ's decision, and which applies to Claimant's application, did not include the provision that the ALJ should assume that the positive straight leg raising test was performed in both positions. Rather, the governing regulation simply stated that "[a]lternative testing methods should be used to verify the abnormal findings; e.g., a seated straight leg raising test in addition to a supine straight leg raising test." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(D) (effective Sept. 24, 2019). The weight of authority among district courts in the Fourth Circuit during the relevant period indicates that the court should affirm the ALJ's decision regarding listing 1.04(A) when the record does not contain an explicit positive straight leg raising test in both positions. *Helene C. v. Comm'r, Soc. Sec. Admin.*, No. CV DLB-18-2938, 2019 WL 7370353, at *4 (D. Md. Dec. 31, 2019), *reconsideration denied,* 2020 WL 1694491 (D. Md. Apr. 7, 2020); *Norris v. Saul*, No. 9:18-CV-2973-DCN, 2020 WL 255703, at *4 (D.S.C. Jan. 17, 2020); *Stamey v. Berryhill*, No. 1:18CV062-FDW-DSC, 2018 WL

8053814, at *4 (W.D.N.C. Oct. 29, 2018), *report and recommendation adopted,* 2019 WL 937331 (W.D.N.C. Feb. 26, 2019); *Alicia S. v. Saul*, No. CV TJS-20-0313, 2021 WL 391881, at *4 (D. Md. Feb. 4, 2021); *Nicole M. v. Saul*, No. 3:19-CV-437-HEH, 2020 WL 4740475, at *4 (E.D. Va. Aug. 14, 2020); *Todd Michael M. v. Comm'r, Soc. Sec. Admin.*, No. CV ADC-19-382, 2020 WL 2319114, at *7 (D. Md. May 11, 2020); *Puccinelli v. Comm'r, Soc. Sec.*, No. CV ELH-17-2246, 2018 WL 2717839, at *2 (D. Md. June 6, 2018); *Cf. Newkirk v. Berryhill*, No. 7:15-CV-273-BO, 2017 WL 1102615, at *2 (E.D.N.C. Mar. 23, 2017).

In any case, the Court need not decide whether Dr. Deer's 2018 straight leg raising test should be construed as positive in the seated and supine positions because the examination did not relate to the relevant period. Specifically, that test was performed after Claimant's date last insured, and there were no prior positive examinations to substantiate that Claimant suffered from nerve root compression during the relevant period. As stated, the only evidence of an earlier straight leg raising examination that Claimant offered was performed two years before Claimant's alleged onset of disability, and it was merely "abnormal" in the supine position and explicitly negative in the seated position, which would not satisfy the listing.

For all of the above reasons, the undersigned **FINDS** that the ALJ properly addressed the relevant evidence concerning straight leg raising tests under listing 1.04(A), and her analysis is supported by substantial evidence. Furthermore, the undersigned concludes that, even if the ALJ erred at step three, which the undersigned finds that the ALJ did not, any such error would be harmless because Claimant did not meet her burden of producing evidence of a positive seated and supine straight leg raising test that related to the relevant period.

### B. Motor Loss

Claimant next argues that the ALJ did not sufficiently address conflicting evidence that Claimant suffered from diminished sensation and reflexes. In that regard, the ALJ cited what the ALJ described as unremarkable treatment records showing stable process and stability. (Tr. at 20). The ALJ further explained that Claimant's diabetic neuropathy was attributed to diabetes, not any type of spinal impairment, and the ALJ cited treatment records documenting normal muscle strength and tone. (*Id.*). The ALJ recognized that Claimant's physical therapy records documented some weakness, but she noted that the therapist did not specify which areas of the lower extremities were weak, and the therapist stated that Claimant "was getting better and stronger" with increased exercise. (*Id.*).

Claimant cites three records in support of her argument concerning sensory and reflex loss, including Dr. Deer's examinations on (1) February 28, 2018, documenting decreased sensation in Claimant's lower extremities and bilateral abnormal knee and ankle jerk reflexes; (2) June 15, 2018, documenting numbness in Claimant's right leg, tingling or paresthesia in Claimant's left lower extremity, and abnormal left knee and ankle jerk reflexes; and February 1, 2019, noting numbness, but no weakness, in Claimant's lower extremities. (Tr. at 489-90, 503, 597). Claimant states that although the records post-date her date last insured, they were still probative of her condition during the relevant period, and the ALJ should have considered them. (ECF No. 13 at 7).

However, the ALJ indeed considered and discussed the medical findings after Claimant's date last insured, including Claimant's examinations in 2018 and 2019. (Tr. at 20, 27-28). Therefore, the ALJ very clearly did not disregard those records. Although the ALJ did not specifically discuss every medical finding after Claimant's date last insured in the step three analysis, she clearly documented that she considered such evidence.

*Smith*, 457 Fed. Appx. at 328 (stating that the decision is read as a whole).

Furthermore, the record corroborates the Claimant did not suffer from atrophy, sensory deficits, or loss of deep tendon reflexes during the relevant period. Claimant's deep tendon reflexes were normal, and she had full muscle strength during numerous examinations from her alleged onset of disability to her date last insured. (Tr. at 294, 320, 324, 330, 336, 341, 345, 351, 355, 567). Her sensation was only diminished in her feet, a finding which the ALJ specifically compared to the listing criteria. (*Id.*). The ALJ discussed that Claimant's neuropathy was attributed to her diabetes, as opposed to a spinal impairment, and it was thus not evidence of nerve root compression. (Tr. at 20).

There are some additional records subsequent to Claimant's date last insured, primarily from Dr. Deer and Claimant's physical therapist, which reflect Claimant's diminished lower extremity sensation, reflexes, and muscle strength. (Tr. at 389-90, 404-05, 422-24, 490, 503, 516-17, 597, 618). However, the ALJ explained that other records during the same time period indicated that Claimant had no weakness and normal sensation without numbness or tingling in her lower extremities other than in her feet. (Tr. at 27); *see* (Tr. at 379-80, 474-75, 480, 508, 567, 571, 575, 579, 583, 587, 591). Further, the ALJ discussed that Claimant's physical therapist recorded that Claimant's strength improved with exercise. (Tr. at 28); *see* (Tr. at 397).

Listing 1.04(A) requires evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04 (effective May 22, 2018). Substantial evidence supports the ALJ's determination that Claimant did not proffer evidence of those listing-level symptoms during the relevant period, and, although some positive findings were noted after the date last insured, they were contradicted by other records and the fact that

23

Claimant's strength improved with physical therapy. Thus, the ALJ adequately addressed and reconciled the conflicting evidence concerning the listing.

For all of the above reasons, the undersigned **FINDS** that the ALJ properly addressed the relevant evidence concerning motor, sensory, and reflex loss under listing 1.04(A), and her analysis is supported by substantial evidence.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 13); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** June 28, 2021

Cheryl A. Eifert
United States Magistrate Judge